IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MILO A. JONES, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>FNU BOKOR, et al., )<br>)<br>Defendants. )<br>) | Case No. 08-3288-JAR |

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case comes before the Court on defendants' Motion for Summary Judgment (Doc. 177) on Plaintiff's Amended Complaint Pursuant to Civil Rights Act, 42 U.S.C. § 1983. Plaintiff Milo A. Jones, proceeding *pro se* and *in forma pauperis*,[1] filed this action against defendant Sue Bokor,[2] whom plaintiff has identified as a physician employed by Correct Care Solution, and defendant Stan Wofford, whom plaintiff has identified as the Administrator for Correct Care Solution. The defendants are sued in their individual and official capacities, for damages and declaratory relief stemming from their alleged violation of plaintiff's Eighth Amendment rights. A *Martinez* Report (Doc. 7) has been filed. Plaintiff filed a response (Doc. 179); defendants filed a reply (Doc. 181), in which they also moved to strike plaintiff's response as untimely, in that it was filed thirty days after their response. The Pretrial Order (Doc. 164) includes the parties' stipulations and respective contentions.

---

[1]Plaintiff's three separate motions for appointment of counsel were previously denied.

[2]Plaintiff spells defendant's name "Boker," but in all of defendant's filings, and in the medical records, her name is spelled Bokor.

Although plaintiff's response was filed out of time, the Court fully considers plaintiff's response. D. Kan. Rule 6.1 requires that responses to motions for summary judgment be filed and served within twenty-one days. Defendants filed their summary judgment motion on December 3, 2010. Plaintiff did not file his response until January 3, 2011, well outside the required time frame. Under D. Kan. Rule 7.4, when a response is not timely filed, respondent waives the right to respond or otherwise controvert the facts alleged in the motion, and the motion will be considered and decided as an uncontested motion and ordinarily granted without such further notice.[3] But, the Court does not treat this motion as uncontested, for "[i]t is improper to grant a motion for summary judgment simply because it is unopposed."[4] Rather, it is the role of the court to ascertain whether the moving party has sufficient basis for judgment as a matter of law.[5] In so doing, the court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts.[6]

Having considered plaintiff's response, the Court nonetheless grants defendants' motion for summary judgment, because plaintiff has failed to show that defendants violated the Eighth Amendment or any clearly established constitutional right.

**I.      Standards for Summary Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is "no

---

[3] D. Kan. Rule 7.4(b).

[4] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985))). The Court notes, however, that failing to file a timely response to a motion for summary judgment still waives the right to thereafter respond or otherwise controvert the facts alleged in the motion. D. Kan. R. 7.4.

[5] *Id.* (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[6] *Id.*

2

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[7] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[8] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[9] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[10] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[12] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[13]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to

---

[7]Fed. R. Civ. P. 56(a).

[8]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[9]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[10]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[11]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[12]*Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[13]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

"set forth specific facts showing that there is a genuine issue for trial."[14] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[15] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[16]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[18] When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[19]

Because the plaintiff is a *pro se* litigant, the court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[20] However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or

---

[14]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[15]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[16]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[17]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[18]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[19]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[20]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

construct a legal theory on a plaintiff's behalf."[21] The court need only accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[22] Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[23]

## II.  Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or taken in the light most favorable to plaintiff. Although plaintiff, through his untimely response, waived his right to controvert facts, the Court has not entirely adopted defendants' factual assertions, where the Court found defendants' reference to the record inaccurate or incomplete. Moreover, although the Court has considered the *Martinez* report, the Court has not relied upon the *Martinez* report to the extent is asserts any material, disputed facts.[24]

Plaintiff Milo A. Jones is an inmate in the custody of the Kansas Department of Corrections ("KDOC") and incarcerated at the El Dorado Correctional Facility ("EDCF"). Defendants are employees of Correct Care Solutions, LLC ("CCS"), a company that provides medical care and treatment to inmates incarcerated within the State's correctional facilities, including plaintiff. Defendant Stan Wofford is the Health Services Administrator for CCS; and defendant Sue Bokor is an Advanced Registered Nurse Practitioner ("ARNP") for CCS.

---

[21]*Id.*

[22]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[23]*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[24] *See Hall*, 935 F.2d at 1109 ( the purpose of a *Martinez* report is to develop a record sufficient to ascertain whether there are factual or legal bases for plaintiff's claims; and the *Martinez* report is to be treated like an affidavit, although the Court may not use it to resolve material, disputed facts.)

KDOC adopted had a hand-cuffing security policy/procedure that required inmates to be handcuffed behind their backs, with their palms turned outward, unless the inmate received an approved exception based on medical reasons. Plaintiff suffered an injury to his shoulder in 2004, and in 2008, complained that the "new" hand-cuffing policy and procedure caused pain to his left shoulder.

On April 7, 2008, plaintiff submitted a medical request form; and on April 8, 2008, defendant Bokor responded, "I have reviewed your chart and x rays and there is no clinical indication to change the current method of being handcuffed." Among the records defendant Bokor reviewed was a radiologist report dated February 23, 2007 that stated that plaintiff's left shoulder showed "[N]o fracture or dislocation. There are not significant changes."

On April 25, 2008, plaintiff met with defendant Bokor for a "sick call"; at this appointment he advised Bokor that he needed to request that he be handcuffed an alternative way. Plaintiff presented Bokor with a one page document purporting to show that he had been awarded damages for an injury to his shoulder. This single page appeared to be part of a legal document awarding some unidentified person $20,000 for pain and suffering. When Bokor advised plaintiff that the paperwork did not reflect or prove his alleged injury, plaintiff became angry, and was escorted from the exam room. Bokor told plaintiff he could resubmit a sick call slip. On April 30, 2008 another sick call was scheduled, but plaintiff did not show up for the sick call. Defendant Bokor noted on the medical record that plaintiff refused to come to the clinic.

On May 6, 2008, plaintiff filed Administrative Grievance #15873 with the KDOC. The grievance pertained to the claims raised in this lawsuit. In this grievance, plaintiff spelled out his

complaint in a ten page attachment, including six pages of narrative as well as the April 7, 2008 medical request form, an April 21, 2004 medical record of plaintiff complaining of an injury to his collar bone, and a single page from a legal document purporting to show that someone had received a $20,000 award for pain and suffering from April 21 to July 9, 2004. In the six page handwritten narrative, plaintiff described meeting with Wofford during April 2008 to complain about defendant Bokor failing to examine his shoulder, failing to provide medical treatment and failing to appropriately respond to his complaints that the handcuffing was causing pain to his shoulder. Plaintiff further stated that Wofford failed to take any action to resolve plaintiff's complaint about the handcuffing causing him pain.

On May 8, 2008, Wofford responded to plaintiff's May 4, 2008 Inmate Request to Staff Member, noting that although plaintiff presented papers to the health care provider, the piece of paper plaintiff tendered did not show how the cuffing policy would adversely harm his shoulder. Wofford also noted, "On 4-30-08 it is documented that you refused to come out for sick call." On May 28, 2008, plaintiff submitted another Inmate Request to Staff Member concerning his shoulder and the handcuffing policy. On June 5, 2008, Wofford reminded plaintiff to put in a sick call request for evaluation and noted he had not been to sick call since April 25, 2008.

KDOC's Unit Team made a timely response to the grievance. On or about June 25, 2008, plaintiff filed an Inmate Response pertaining to this grievance. On or about June 27, 2008, Warden Ray Roberts responded to the grievance, concurring with Wofford's position that no further action was necessary. Warden Roberts advised plaintiff that he could appeal the decision. Plaintiff appealed to the Secretary of Corrections on July 11, 2008. On August 11, 2008, the Secretary of Corrections Designee concluded that plaintiff "has access to adequate medical

7

care," and that "[n]ormal handcuffing procedures shall be used."

III.    Discussion

Plaintiff contends that he has experienced pain in his left shoulder as a result of being subjected to the EDCF handcuffing policy, which requires inmates to be handcuffed behind their backs, with their palms turned outward. Plaintiff contends that Bokor denied plaintiff's request for a medical restriction that would effectively grant him an exception from the handcuffing policy that would allow his hands to be cuffed in a different manner. Plaintiff contends that Bokor denied his request without physically examining him, and in reliance solely upon the medical file and records. Plaintiff contends that when he complained to Wofford, he only cursorily reviewed the matter before affirming Bokor's position. Thus, plaintiff asserts that defendants Bokor and Wofford violated his Eighth Amendment rights, through their deliberate indifference to a serious medical need.

A.      Personal Participation

Defendants move for summary judgment on the basis that plaintiff has failed to show their personal participation in the claimed deprivation of a constitutional right. To sustain an action under 42 U.S.C. § 1983, a plaintiff must plead facts showing a defendant's personal involvement in the alleged violation.[25] "In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."[26] When a claim is asserted against multiple defendants, plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as

---

[25] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

[26] *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

8

to the basis of the claims against him or her."[27] The Tenth Circuit has held that, "[g]iven the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."[28]

Furthermore, liability cannot be imposed vicariously via the doctrine of *respondeat superior.*[29] The Tenth Circuit has explained that, when asserting a claim against a supervisor, plaintiff must demonstrate "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."[30]

Defendants argue that plaintiff has failed to show the requisite personal participation because neither of them were involved in adopting, implementing or applying the handcuffing policy, a security procedure exclusively in the domain of the state officials at EDCF. But defendants mis-characterize plaintiff's claim. Plaintiff does not allege a violation of the Eighth Amendment for excessive force in placing him in handcuffs in an injurious manner. Rather, plaintiff claims that the defendants violated the Eighth Amendment through their deliberate indifference to his serious medical need, that is, being deliberately indifferent to his need for

---

[27]*Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)).

[28]*Robbins*, 519 F.3d at 1250.

[29]*Trujillo*, 465 F.3d at 1228.

[30]*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

them to approve a medical restriction that would have excepted him from that particular manner of handcuffing.

The claim of deliberate indifference to a serious medical need is one in which plaintiff has sufficiently demonstrated personal participation by these defendants. Plaintiff must show that the defendant did something that caused or contributed to the violation of the constitutional right.[31] Although the defendants did not have the responsibility or authority to decide whether plaintiff was excepted from the handcuffing policy and procedure, they had the responsibility and authority to determine whether a medical restriction was justified and appropriate. In that sense, the defendants did something that caused or contributed to the alleged violation. Bokor reviewed plaintiff's medical record and decided that there was no reason to recommend a medical restriction. That is sufficient personal participation to expose Bokor to liability for deliberate indifference to a serious medical need. And Wofford, acting in a supervisory and managerial capacity, reviewed Bokor's action and affirmed her decision. That is sufficient personal participation to expose Wofford to liability for deliberate indifference to a serious medical need. For, although it is not enough for plaintiff to show that a defendant was simply in charge of another person who actually committed a violation, it is enough to show that a supervisor acted deliberately or intentionally in violating his constitutional rights, such as by directing the violation or having actual knowledge of the violation and acquiescing in the violation.[32]

**B.      Failure to State a Claim for violation of Eighth Amendment**

---

[31] *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citations omitted).

[32] *Dodds*, 614 F.3d at 1199.

10

Defendants further move for summary judgment on the basis that the Complaint fails to state a claim for violation of plaintiff's Eighth Amendment rights. The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief,"[33] or when an issue of law is dispositive.

Plaintiff claims that defendants acted with such deliberate indifference to a serious medical need, in rejecting his request for a medical restriction that would have justified the prison in excepting him from the standard handcuffing, which allegedly caused pain to his shoulder. The Eighth Amendment protects prisoners against cruel and unusual punishment, including deprivations that are part of the punishment, and certain deprivations suffered during incarceration.[34] But the Supreme Court has held that since only "the unnecessary and wanton infliction of pain implicates the Eighth Amendment,"[35] an inmate with an Eighth Amendment claim based on prison doctors' inadequate attention to medical needs, must show "deliberate indifference to his serious medical needs."[36]

To demonstrate such deliberate indifference, plaintiff must show that there was "sufficiently serious" deprivation,[37] and that the officials acted with a "sufficiently culpable state

---

[33]*Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir. 2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

[34]*Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[35]*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal citations omitted).

[36]*Id*.

[37]*Id*. at 298.

of mind."[38] In other words, in the context of medical care and treatment, the test for liability of the actor(s) "involves both an objective and subjective component."[39] The objective component of deliberate indifference is met if the deprivation is "sufficiently serious."[40]

Plaintiff must first produce objective evidence that the deprivation at issue was in fact sufficiently serious.[41] A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even lay person would easily recognize the necessity for a doctor's attention."[42] Plaintiff has failed to produce objective evidence of a serious medical need. Plaintiff alleges that he suffered an injury to his shoulder in 2004, sufficiently severe to warrant his receiving damages for pain and suffering. Even accepting that as true, he fails to establish a serious deprivation of a serious medical need by these defendants. First, it is undisputed that plaintiff did not present Bokor with clear evidence that he had suffered an injury in 2004. He showed her a page from an unidentified legal document, regarding an unidentified individual. But even if Bokor, or Wofford had been aware that plaintiff had suffered a compensable injury in 2004, that does not demonstrate that it was an injury currently mandating treatment, or an injury so obvious that a lay person would easily recognize the necessity for a doctor's attention four years later in 2004.

Plaintiff has also failed to satisfy the subjective component of the deliberate indifference

---

[38] *Id.*

[39] *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

[40] *Id.*

[41] *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (citing *Wilson*, 501 U.S. at 298).

[42] *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (citations omitted).

test. The subjective component is met if the prison official "knows of and disregards an excessive risk to inmate health or safety."[43] Again, plaintiff has failed to show that Bokor or Wofford knew that plaintiff had a serious shoulder injury and that subjecting him to the standard handcuffing exposed him to an excessive risk to his health or safety. On the contrary, the record shows that Bokor spoke with plaintiff, reviewed his medical record, and determined that there was no clinical reason to request a medical restriction. Yet, Bokor also suggested that plaintiff return for another sick call, after he was removed from her office during the April 25 sick call because of his anger and belligerence. Plaintiff missed the next scheduled sick call and failed to make further appointment. Deliberate indifference to serious medical needs can also be shown when an inmate is denied access to medical personnel capable of evaluating his need for treatment, or when an inmate has been prevented from receiving recommended treatment.[44] But there is absolutely no showing that Bokor or Wofford either denied him access to medical care, or were aware and deliberately denied him access to medical treatment, or other accommodation such as a recommendation for a medical restriction to the handcuffing policy. Furthermore, an inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment, is not cognizable under the Eighth Amendment.[45] Moreover, the fact that plaintiff disagrees with the clinical findings of Bokor and Wofford's affirmation of the same, does not support a claim under the Eighth Amendment.[46]

---

[43] *Sealock*, 218 F.3d at 1209(citations omitted.)

[44] *Ramos*, 639 F.2d at 575.

[45] *Id.*

[46] *Id.*

C.  **Qualified Immunity**

Defendants further argue that they are entitled to qualified immunity from liability, because their conduct did not violate any clearly established right. "The doctrine of qualified immunity protects government officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[47] "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[48] The doctrine "is designed not only to shield public officials from liability, but also to ensure that erroneous suits do not even go to trial."[49]

Once defendant pleads the defense of qualified immunity, plaintiff bears the burden of establishing that defendant's conduct (1) violated a federal constitutional or statutory right (2) that was clearly established at the time of the conduct at issue.[50] Under the second prong, a plaintiff can demonstrate that a right is clearly established—such that, at the time of the violation, "a reasonable official would understand that what he [was] doing violates that right"—by "references to cases from the Supreme Court, the Tenth Circuit, or the weight of

---

[47]*Pearson v. Callahan*, —U.S.—, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[48]*Id.*

[49]*Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 780 (10th Cir. 1993).

[50]*Briggs v. Johnson*, 274 F. App'x 730, 733 (10th Cir. 2008); *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (citing *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997)); *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

14

authority from other circuits."[51]

As fully discussed above, plaintiff has wholly failed to demonstrate that these defendants violated the Eighth Amendment, nor any other clearly established right. Thus, the defendants are entitled to qualified immunity.

D.  **Official Capacity Claims**

Plaintiff also sues defendants in their official capacities, seeking declaratory and injunctive relief requiring immediate medical treatment by a specialist as well as an order restraining defendants from working or coming in contact with him. To create liability under § 1983 against a defendant in his official capacity, plaintiff must allege facts showing "(1) that a constitutional violation occurred and (2) that some official policy or custom was the moving force behind the violation."[52] "However, liability will not attach 'where there was no underlying constitutional violation by any of [the officials].'"[53] Without sufficient allegations of a constitutional violation, plaintiff cannot provide the nexus required for official-capacity liability under § 1983.[54] Therefore, plaintiff's official capacity claims for declaratory and injunctive relief also fail, for as previously explained, the Complaint fails to show a violation of constitutional rights.

**IT IS THEREFORE ORDERED**, that defendants' Motion for Summary Judgment

---

[51]*Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009).

[52]*Stevenson v. Whetsel*, 52 F. App'x 444, 446 (10th Cir. 2002) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 820 (1985)).

[53]*Ellis v. Ogden City*, 589 F.3d 1099, 1104–05 (10th Cir. 2009) (quoting *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006); citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

[54]*Id.* at 1105; *see also Calderon v. Kan. Dep't of Soc/ & Rehab. Servs.*, 181 F.3d 1180, 1185 (10th Cir. 1999) (noting that official-capacity claim for injunctive relief required allegations rising to the level of a constitutional violation).

(Doc. 177) is **GRANTED** on all claims.

    **IT IS FURTHER ORDERED**, that this case is **DISMISSED WITH PREJUDICE**.

    **IT IS SO ORDERED.**

Dated: January 24, 2011

                                                                    S/ Julie A. Robinson
                                                                    JULIE A. ROBINSON
                                                                    UNITED STATES DISTRICT JUDGE